v. McKesson v. McKesson  Good morning, this is number 2430494, Ford v. McKesson, back for the third time. Right?  Third or fourth. Yes, Your Honor. Good morning, Your Honor. Stana Grodner on behalf of Officer Doe, who we now know as John Ford. As Your Honor mentioned, this case started in district court, came to the Fifth Circuit, went to the Supreme Court, came back to this court, went to the Louisiana Supreme Court, came back to this court, went back to the Supreme Court, back to the district court. Here we are again. Our case was put on basically a rocket docket in August of 2024—I'm sorry, 2023. And summary judgments were filed. Summary judgment was filed in January. We responded to that summary judgment and offered what we thought was a substantial amount of evidence to show that we had a basis to go to trial and that we could prove all the allegations set forth in our original complaint. An amended complaint was ordered filed along the way, and we had intended to bring in the Black Lives Matter Network and Black Lives Matter LLC. However, due to a footnote in this court's mandate, I believe it was the last mandate, we were blocked from bringing in Black Lives Matter or doing any discovery on the agency relationship under state law, which in Louisiana is called respondeat superior, where the principal is liable for the actions of the agent. So that was our first issue that we assigned as error, that we felt that the district court erred in dismissing Black Lives Matter Network LLC with prejudice on the basis of a footnote in the mandate. And the footnote in the mandate basically said, we don't think there was briefing on this when we, in fact, had briefed it, and we certainly would not have been on notice that that would be a complete block or bar to our later attempting to, when we were sent back to district court to amend our petition and bring this party in with stronger allegations, with more clear allegations. And that's not an issue that Mr. McKesson has challenged. He has not said that we were wrong there. There's been no answer to that first issue. The second issue we raised to this court was, we believe that the district court failed to follow the standard on summary judgment, that we believe the district court, and we think we showed that in our briefing, that he used impermissible credibility determinations and he discounted our . . . Well, I think I'm a little confused by the briefs in comparison with the district court judgment or opinion. Why don't you go through the criteria for proving negligence against this defendant and just tell me what your evidence is that creates . . .  I don't care what the district court said about it, just because he had so many pejoratives in there, it was difficult. So just tell me what your evidence is in support of the cause of action. Thank you, Your Honor. That was issue number three that we thought we were briefing to the court or intended to brief to the court, and that was the issue they raised on summary judgment, that McKesson, whether he organized the protest, whether he breached the duty to the plaintiff, and whether the breach was cause and fact for the negligence claim. Those were the issues that were placed before the district court. As to organization of the protest, we did brief that in the district court. We had a special section devoted to that with McKesson's deposition testimony that he tweeted, retweeted, amplified the directions that there was going to be a protest in Baton Rouge following the Alton Sterling shooting that took place, and this, of course, was the day or two after the shooting of 12 officers in Dallas. So we offered the evidence from his own testimony that he did these. We also offered testimony from our client, Officer Doe, that he, before McKesson even arrived, they had briefings amongst the police officers at headquarters where they brought the officers in and said, this is what you need to look for. This is the main guy. Here he is. He's going to be leading this. So they knew who to look for before the protest even started. Once the protest started, our client was down there on the corner near the old women's hospital, which is now Baton Rouge Police Headquarters, and there's a Circle K across the street. And that's where the looting first started, and McKesson was seen picking up a bottle of water. McKesson's testimony was that he would not have walked with the water or he wouldn't have drank the water, so he somehow got rid of the bottle. And we don't think it's a far reach to say that he must have thrown the bottle when the others were throwing their bottles and other things they looted from the Circle K. We also offered McKesson's own testimony that he was leading protesters towards I-12. We have the video in evidence that shows McKesson once they were turned around. He admits that he was turned around while marching towards I-12. So I mean, I'm sorry, yeah, I-12 up Airline Highway. So you have police headquarters, you have Airline Highway, I-12. So he's marching this way and leading the group when he's turned around. And the video, which Your Honor's talking about watching videos, so I'm sure you all have seen the video, he is saying on the video, they're literally right behind me. He's talking about the police and there's cars bonking and car lights and car horns, and he stages his arrest and he's already got lawyers lined up for when he is arrested. So if you're going this way and leading people and there's people behind you and you get stopped and you have to turn around, where are you then? You're at the end. So he's at the end walking back. Police are telling him there, you're going to get arrested, you're in the street. At the same time, our client, Officer Doe, is down the street a little ways with these other protesters in the street and there is actually a circle of officers with these riot shields. There have been 12 officers shot the day before in Dallas. So this was pretty high intense situation for the Baton Rouge Police Department. This is, you know, not a giant police department, but adequate for a city of our size. And so they're holding their riot shields and he's one of the officers who's been assigned to go out, arrest protesters marching, violating the law in a public highway, bring them back behind the line and where they have others that process the persons who are being arrested. So he, of course, makes his arrest. He's going back. That's when he's hitting the face and it's roughly at the same time that McKesson is arrested blocking a public highway while after being turned around, which the people that injured our client are in the same group that McKesson was leading. So we then show that McKesson the next day in the newspaper takes credit for the riots. He's out front and center. We showed that the history and the backdrop knew or should have known that there would be violence at this protest based on the history of violence and prior protests. In fact, just the day before with 12 people being shot. There's no connection between McKesson and Black Lives Matter with the assault on the Dallas officers, is there? No, there's not. Yeah. To my knowledge. Right. To my knowledge, there's not. In fact, the individual who did the shooting, there was actually another officer, there was actually another person who followed Black Lives Matter, Gavin, I forget his name, at that same protest who just days later came to Baton Rouge from that protest and shot I think it was six Baton Rouge officers. So although they were not, McKesson wasn't there. It was Black Lives Matter led protest in Dallas, Texas when these 12 officers were shot. And they were in fact, they called it the weekend of rage. And so there were several protests staged over the country with Black Lives Matter protesting various shootings of minority persons. So we offered this evidence and we offered the evidence also that McKesson was the lead plaintiff in the class action lawsuit that was filed over the arrests. So we do feel that we offered sufficient evidence to go before a jury. That one of the things that Your Honor brought up that we're concerned with is whether or not we would be allowed at trial to show the backdrop, to show new or should have known, to show the history of this organization and the riots and protests that McKesson, who's I believe here in court this morning, that McKesson attended before this protest. We think judging by what the district court wrote, he would exclude all that sort of evidence. And Your Honor in fact asked a question, you know, well he wasn't at this particular riot where these officers were shot the day before. He wasn't because he was in Baton Rouge. So we feel that the court erred in dismissing Black Lives Matter Network LLC when they hadn't even been brought into the lawsuit and dismissing them with prejudice, not allowing us to amend, not allowing us any discovery on that issue. We believe that the district court provided the wrong standard of review on the motion for summary judgment. In fact, the district court even said in some places, well, they did offer evidence that he was leading some people. But the evidence we offered critical to the people that he was leading were those people violating the law by marching on the highway. That's the evidence we offered that's critical. So unless Your Honors have some questions, I'd like to reserve the rest of my time. Is the question of duty in Louisiana, that's a question of law, right? Yes, Your Honor. We believe that was answered by the Louisiana Supreme Court. Okay. And how do you create a fact issue on whether he was a cause in fact of the injury? But for McKesson, organizing the protest in front of the Baton Rouge Police Department and leading protesters down the highway in violation of law, he was specifically baiting the police to make arrests. He was already aware that water bottles were being thrown on the corner because he was there. We have evidence that places him on that corner when they were already throwing water bottles. We have evidence in the record that he was well aware of the violence at the other protests. In fact, he was practically a professional protester. He protested at one of these protests for over 100 days. So he was well aware of the violence that was anticipated. And in view of that knowledge, he proceeded to bait arrests when he knew more likely than not police officers would be injured, when they were already throwing objects before he even started leading them down I-12. Thank you, Your Honor. All right. You have time for rebuttal. Ms. Edelman. Good morning, Your Honors, and may it please the Court. I am Vera Edelman, appearing on behalf of Mr. McKesson, who is indeed here today. This case is here on summary judgment, no longer on a motion to dismiss, and now is the time for facts, not allegations. This Court has made clear in its prior opinion that successfully pleading this case is a far cry from successfully proving it, and that proving it would be a, quote, tall task subject to, quote, demanding standards that would only be met in the most unusual, extraordinary, and rare case. This isn't such a case. This Court also made clear to the parties what Officer Ford would be tasked with establishing, and he didn't do his job. He didn't put forth the evidence necessary to back up the allegations that this Court spent years reviewing and parsing. What I don't understand, well, number one, explain to me why Black Lives Matter was properly dismissed. We take no position on that, Your Honor, because I represent Mr. McKesson, not Black Lives Matter. Oh. Okay. So there's no defense for Black Lives Matter here. They did submit a letter. I'm just relaying this to you from being aware of the record in this case, but I, that we take no position on it as Mr. McKesson's attorneys.  All right. In particular, there's no evidence here of the linchpin of the cause of action that this Court considered and approved previously that Mr. McKesson led or organized the protest, nor... I do not, well, he wasn't, he doesn't live in Baton Rouge. He doesn't, he attended the protest. There is... I understand that.  And before that, he was at the Ferguson protests in Missouri for months. Yes. I think that... Undisputed. And he had gone somewhere in Dallas at that protest, right? No, he did not. That's right. He wasn't, but he did admit to having been, quote, present at a number of protests, correct? Yes, but I think being present at protests is a far... Let me... I'm asking you questions. You can, I'll give you your chance, but what occurred, and he was, some kind of person visibly and publicly associated with Black Lives Matter, correct? He was a well-known, is a well-known civil rights activist. Right. So all that being the case, it was not irrational, and the judge excluded evidence of the briefing that the police received immediately before the protest, but it was not irrational for Ford, as a matter of his personal knowledge, to say, McKesson is one of the leaders and we have to watch out for him. It was not a rational based... So first, those briefings were hearsay. Officer Ford was not able to identify who gave those hearings, who actually... Because he had that, he had gotten the information, and his state of mind was, I'm looking for McKesson. Yes, but I don't think that that establishes a tort claim. Well, we'll see about that, all right, but anyway, he identified McKesson as soon as he went out into the area where the protest was being organized, right? Yes, I think there's a difference between what Officer Ford believed to be Mr. McKesson's role and what he... I don't care about that. What I'm getting to is this, as a lead-in to letting you give your side, your position. I do not understand why the district judge basically disregarded all of Ford's testimony. I think he did not disregard Officer Ford's testimony on his own personal knowledge. I agree that he disregarded or said that it was inadmissible to rely on the briefings, but I think that that was because of the hearsay problem. Tom McKesson, who he characterized as acting as the leader, conferring with other people, people following McKesson wherever he went, he saw the water bottles, which were dispersed among the crowd, and then the water bottles eventually were being thrown at the police. Yes, but I think that this court established three significant respects in which the allegations identified Mr. McKesson as being the leader, which is a far cry from simply being a participant, both as a matter of a Louisiana tort law and as a matter of First Amendment law, as this court has already held and established. It used words like organized, arranged, planned, operated, was in charge, regularly gave orders, personally directed the activities of others, personally assumed control of the protest movements, and it identified the three significant respects, as I mentioned, in which Mr. McKesson was alleged to be the organizer and breached his organizer duty here. First, that he organized the protest to begin in front of the police station, obstructing access to the police station. There's no evidence of that here, all that Officer Ford has offered. He's just accidentally there. He was present, but he didn't choose the location. He was a known leader of Black Lives Matter. But those are two different things. Simply being a well-known activist who attends a protest. Did the jury draw inferences about that? I think that that would really open this case to not being the rare case, but the very common case. And this court specifically said that it would only be the rare case that met the standards established here. This is a case in which otherwise anyone with a social media following who attends a protest would open themselves up to exactly this kind of liability. No one who is a prominent activist, no one who's a famous person. I'm comparing this to J6. And the government criminally charged groups that were denied they were organizing J6, but the government criminally charged and sent to jail a bunch of people who were organizing that. They had to establish, to the extent, I... They had to establish beyond reasonable doubt. Nobody who's reading the newspapers can fail to note that Black Lives Matter burned down in Minneapolis. And therefore, it seems to me, and this was before Minneapolis, to be fair, but it was after Ferguson, you know, burn the pigs, fry them like bacon. Again, I assume that would come up during a trial. Again, we are here representing Mr. McKesson and not BLM, and the question is, what's the specific role? Well, but he admittedly had a high-ranking position with BLM. BLM is not an organization with which one can have a position. He was a... It doesn't matter. Well, he had a significant enough connection, even if they were a laborer's party or some group of disaffected farmers or something like that, but to be interviewed more than once on national TV. But that is merely associating him with a movement that holds particular views. That doesn't establish that he was the leader, the person in charge of this protest, which this court has said is what is required for proving the cause of action here. There needs to be actually leading, organizing control. The court specifically said that it would not hold associates liable for lack of, without any proof of intent, and that is not the theory here. It's not about intent. It is about negligence, and it specifically said that because leaders can be subject to a broader scope because they are, quote, far more responsible for the organization's operations and therefore have a closer connection to unlawful activities committed by its members. Officer Ford has not shown... Counsel, are you able to hear me? Yes. I apologize for having to do it over Zoom, but why can't we talk about for a minute Mr. McKesson's own words at his deposition? So if you have in front of you page 1739 of the record, Mr. McKesson at his own deposition admits that he was, quote, part of a team of incredible leaders who were planning things at the Baton Rouge protest. So that's not about BLM. That's not about being a civil rights activist. That's not generalities. That's his own words, 1739, his deposition. Yes. Thank you, Your Honor. As you can probably see, I'm just flipping to it. Of course. I have the advantage of an iPad. And do you have the line by any chance? I don't. I'm sorry. They're cut off on my PDF. Well, I think you can assume that Judge Oldham is accurately quoting for the sake of efficiency. I'm sorry. Could you say again what the quote is?  Mr. McKesson admits that he was, quote, I'm sorry, was as in the quote, quote, was a part of a team of incredible leaders who were planning things at the Baton Rouge protest. Record 1739. Assume that's the case and just... I candidly don't recall that from the deposition. And I did read it many times. That is not to say that I disagree with Your Honor's quoting of it. I think one question would be what precisely he was planning. And I don't think that this makes clear in any way that he planned any... Did they plan to protest in a park as opposed to obstructing the road? There's no question he immediately went out into the road, right? And all the demonstrators went out into the road. He did not immediately go out into the road. As I understand the deposition testimony from both Officer Ford and Mr. McKesson, they were in the parking lot, the Circle K lot, for a large portion of the day. And even before Mr. McKesson purportedly walked out into the road, people were throwing objects. Well, obviously, but Mr. Ford didn't have things thrown at him until he was starting to arrest people. Other officers did. So I think there isn't clarity on Mr. McKesson, if he did in fact lead people onto the road, which I don't think the evidence shows, that he was the cause in fact. And that is an independent requirement of the tort theory here. Officer Ford's deposition testimony says, in fact, that the person that he arrested, the agitator who led him to cross in front of the shields, was in the parking lot, not in the street, and that the object was thrown at him from a person in the parking lot. So I think that really is an absence of evidence connecting, even accepting, that Mr. McKesson was a person who led others onto the street, which again, I don't think is correct. And Mr. McKesson, in fact, specifically disclaims in his deposition, which was the one thing that Officer Ford just relied on to suggest that Mr. McKesson, in fact, led people. His attorney said that Mr. Well, I mean, what about what she, Ms. Grodner explains, that he did admit they were going to block I-12. He admits that he was walking towards I-12. And walking in the middle of the road. They were not, he does not admit that they were walking in the middle of the road. Well, he got arrested in the middle of the road. He got arrested on the side of the road, on the theory that he was walking in the road, and that arrest was then expunged. Well, somebody, yes, but that means he had been in the road, and then he was, and they were headed, at least headed toward blocking a major highway in Baton Rouge. They were headed to walk towards I-12. That is correct. He and the group were turned around by the police, and the fact that he was the back of the crowd at that time suggests very strongly, again, a juror could infer, that he must have been at the front of the crowd to begin with. Not if they watch the entire video, to be, from my perspective, because I think that video shows, when he pans both in front and behind him, that there are many people both in front and behind him. So he is, in fact, in the middle. Someone will always be at the end when they turn around, and the fact that there are others behind them just means that they're not at the very, very back. I think watching the entirety of the video shows that there are, in fact, people both in front and behind Mr. McKesson. The video also shows that the protest doesn't just end or just erupt into chaos when Mr. McKesson is arrested, and if, in fact, he exercised the level of control and direction that is alleged, but I will submit not established here, that wouldn't have happened. People wouldn't have known what to do if he were the leader, the organizer, the one controlling everyone. Is it essentially the case, but for Black Lives Matter, there would have been no violence or Black Lives, and he has to admit he's associated with Black Lives Matter, that the presence of Black Lives Matter was irrelevant to the existence of violence, that it would have occurred anyway. What Officer Ford has to establish is that Mr. McKesson, individually, was the but-for cause, that he was the necessary antecedent, that the specific actions taken by the defendant, in the words of this court's prior opinion, caused the alleged injury. The specific acts of Mr. McKesson, and I would submit that there is a complete absence of evidence with respect to that. I also think that's the narrowest way, frankly, to decide this case, that there is not evidence that the injury that Officer Ford suffered was caused by Mr. McKesson. So what you're saying is cause and fact or duty? Cause and fact. The court said, in particular, that cause and fact would be a tall task and that the standard will only be met in the exceptional cases where, quote, the leader's specific actions caused the plaintiff's injuries, and there is not that evidence here. People were throwing objects at officers throughout the day and night, before and after Mr. McKesson walked into the street. That's at ROA 1699, line 16 to 20. This wasn't a linear, monolithic event that crescendoed into one moment where everyone walked into the street and police had to respond. Police were there all day, and people were throwing objects at them all day. It was multi-armed and ebbing and flowing throughout the day and night without any direct tie to Mr. McKesson, according to the evidence here. The arrest team was making arrests before and after. From another standpoint, if the violence is occurring all day, and Mr. McKesson, again, intimately connected with Black Lives Matter, is there as a mere participant, why could he not have quelled the violence? Because that assumes a level of control that, again, Officer Ford has failed to establish. Someone who's simply at a protest. It was a control either way, couldn't it? Sorry, could you clarify that? Either he could have ... The negative implication is that he did not disavow violence, and therefore he was willingly participating in what Black Lives Matter was intimately associated with. I don't think so, because I think the precedent question is, was he in fact someone who had any control? Could he stop the violence that was occurring? And the answer to that is no, at least not on the record before this court. The fact that someone who merely goes to a protest, who merely attends a sports rally after an LSU victory and sees people throwing objects and doesn't try to stop those people if they have no ability to, does not create liability, does not show that they had a duty, much less that they breached that duty. There's the first question of whether he was the leader, whether he did have control, and there isn't evidence showing that he, in fact, did here. So, the fact that he wasn't able to stop any of the purported looting that was happening- There's no evidence that he even tried. But he has no obligation to try if he's not the leader or the organizer. There's no reason to do that. There also is evidence, to the extent that this court chooses to look at the articles which we submit are hearsay, that he consistently disclaimed violence at protests. He consistently said that he wants people to protest peacefully and that he is not someone who supports, though he can understand the reasons behind, violence at protests. A jury could disbelieve that. A jury could disbelieve any number of things, but the question here is whether there's- The Black Lives Matter movement is associated with violence repeatedly over a period of years, isn't it? Association with a particular organization, a particular set of beliefs, is by no means proof- Sitting back while the organization watches police injured and vandalism and damage, looting and that kind of thing. I mean, again, I'm just trying to figure out what a jury could infer. The question- You can't just take- He is not Martin Luther King who was arrested for sit-in. He is not a leader who was arrested for a mere sit-in. Every protest that he's connected with ends in violence. The question here is what Mr. McKesson, the evidence shows, Mr. McKesson did at the Baton Rouge protest, and the evidence here shows nothing except that he is associated with a particular movement, a particular set of beliefs that I would say is quite akin to the civil rights movement, that he is someone who has a large social media following and repeated the location and time of a protest that was chosen by others, and that he is participated and agreed with the message of the protest that day. That cannot be the rare case that actually leads to a trial on this theory. It is possible that going to a jury, which could find that the opposite of your contentions would result in yet another appeal, and we would find out whether all of the evidence taken as a whole suffices to establish these criteria. Yes, but I would submit that right now we have that evidence before us, and it doesn't. All they had to produce is enough evidence to create material issues of fact. And they failed to do that. The court made clear- Well, your brief doesn't even defend the way the judge wrote his opinion, as I view it. So that's why I started out with her by saying, I just want to hear what the evidence is. And I'm personally going to go through every bit of the evidence after this matter is over, because I was not fully persuaded by the district court's opinion. So- And I think that's completely within this court's discretion and authority. I think that's right. And I have gone through the entire record. And our brief- Both sides have. Absolutely. And our brief lays out the absence of evidence here. It was Officer Ford's obligation to show that Mr. McKesson led, organized, and controlled the protest, and that he, in fact, caused Officer Ford's injuries. And there simply is not evidence showing that here. Okay. Thank you. Thank you. I'd just like to touch a couple of factual statements made, one of which was that he was on the side of the road when the arrests were made. Your Honor, you said you were going to go back and look at the evidence. Look at the video. On the video, he is in the road with the red shoes. And the officers are saying, hey, you with the red shoes, get out. They were repeatedly asking him to get out of the roadway. She says she's seen the whole video as though it was from him when he left the Circle K, began marching, and came back. It shows him after they were turned around. And he says, on the video, we are walking back. And the police he's talking about are literally right behind us. You can see on the video the headlights and the cars blaring their horns from where they were blocking a public highway at the time of the arrest. So the statements made that he's on the side of the road, not supported by video evidence. They said, oh, he distanced himself from violence. Actually, we offered the Wolf Blitzer article, which was a transcript of an interview that Wolf Blitzer had with Mr. McKesson. During that interview, Wolf Blitzer gave Mr. McKesson an opportunity to distance himself from the violence of Black Lives Matter. And he refused to do so. In fact, they actually—  Is that admissible evidence? I think it could be. It's his statements. It's his video. It's his interview. Might be admissible on impeachment. Could very well be, Your Honor. We certainly would want to offer that, showing that he had an opportunity to distance himself from the violence and failed to do so. Also, the publication showing his face on the cover of, I think it was Forbes magazine, I forget which ones, showing him as the face of Black Lives Matter. He was invited to the White House during this entire period when he was on the face of magazines as the face of Black Lives Matter. Multiple interviews showing him as the representative of Black Lives Matter. He was invited by Obama to come to the White House to discuss these riots and so forth. So I don't know why he would be invited if he was simply an attendee and just kind of was following along the Black Lives Matter movement. So one other point they made, they said, well, you know, there would have been this violence anyway. We did offer the testimony of Officer Ford, where he said they knew several of the people in the crowds that were locals. And they said, hey, you know, they were throwing stuff. And it was a kind of a scary thing for the officers. And the leaders of the community said, hey, you know this isn't the way we do things. So the out-of-town protesters were stirring up all this violence. Well, that's hearsay. Correct. And we could, in fact, bring, you know, a couple of leaders like Gary Chambers to testify about what the community felt about the violence that was brought on. In fact, you know, Gary Chambers was representing the family, and they did not even invite Mr. McKesson to the funeral. So he was not exactly persona grata in Baton Rouge. Thank you, Your Honors. All right. Thank you. All right. The court will stand in recess. Thank you very much.